UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

APR 16 2007

JOHN F. CORCORAN, CLERK
BY: _____
DEPUTY CLERK

|  |  |
|---|---|
| John T. Nelson<br>c/o 1901 East Franklin Street, Suite 107<br>Richmond, Virginia  23223<br><br>          Plaintiff,<br>v.<br><br>Lori Green<br>Albemarle County Department of Social Services<br>1600 5th Street, Ext.<br>Suite A<br>Charlottesville, Virginia 22902<br><br>Cindy Casey<br>Albemarle County Department of Social Services<br>1600 5th Street, Ext.<br>Suite A<br>Charlottesville, Virginia 22902<br><br>John Freeman<br>Albemarle County Department of Social Services<br>1600 5th Street, Ext.<br>Suite A<br>Charlottesville, Virginia 22902<br><br>Kathy Ralston<br>Albemarle County Department of Social Services<br>1600 5th Street, Ext.<br>Suite A<br>Charlottesville, Virginia 22902<br><br>Viola Vaughn-Eden<br>610 Thimble Shoals Blvd<br>Suite 301 D<br>Newport News, Virginia 23606<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>Civil Action No. 3:06cv00070 |

## FIRST AMENDED COMPLAINT

Plaintiff John T. Nelson submits this First Amended Complaint pursuant to 42 U.S. C. §§ 1983 and 1985 to seek redress for Defendants' violations, under color of state law, of his liberty interest in his relationship with his child and to seek redress for the malicious prosecution to which the Defendants subjected him. In support thereof, he states as follows.

## INTRODUCTION

1.      Beginning in December of 2004, four of the Defendants, employees of the Albemarle County Department of Social Services, did not simply botch an investigation into highly dubious allegations of child abuse, they used their official positions and the profound powers afforded to them to ignore clear evidence of false allegations, prejudge a father falsely, produce tainted evidence, violate state laws and court orders, and vindictively impair a father's relationship with his child based upon their own tainted evidence. This case challenges the conduct of a child abuse investigation by these four Defendants as well as the actions of the psychologist who acted at their direction to produce a false and unreliable report of abuse. The Complaint alleges that the Defendants engaged in willful, intentional and grossly negligent conduct in an effort to establish a false finding that Plaintiff had sexually abused his child. Defendants' evidence underlying the false finding was deemed "tainted" by the Albemarle County Juvenile and Domestic Relations Court and subsequently was reversed by the Virginia Department of Social Services on a finding that Defendants "did not even come close to proving [their] case by a preponderance of the evidence." Defendants ignored these and other judicial

findings, as well as markers all along the way, and exercised their administrative powers to vindicate their unreasonable and false finding and their own mistakes at all cost.

## JURISDICTION & VENUE

2.    This case arises under the United States Constitution and the laws of the United States and presents a federal question within this Court's jurisdiction under Article III of the Constitution and 28 U.S.C. § 1331 and 28 U.S.C. § 1343(3). This action is brought pursuant to 42 U.S.C. §§ 1983 and 1985 as an action to redress the deprivation under color of state law rights secured by the United States Constitution.

3.    The Court has jurisdiction over the malicious prosecution claim pursuant to 28 U.S.C. § 1367(a) because the claim is so related to the federal constitutional claims that they form part of the same case or controversy.

4.    The Court has authority to award costs and attorneys' fees pursuant to 28 U.S.C. § 1988.

5.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## THE PLAINTIFF

6.    The Plaintiff, John T. Nelson, resides in Nelson County, Virginia. Mr. Nelson is the father of Sarah Doe, a 6 year old girl, who resides with her mother in Albemarle County. Mr. Nelson shares joint legal custody for the child with the mother, Cathy Doe. (All three of these names are pseudonyms, used to protect the privacy interests of the Plaintiff, his child and his child's mother. The true identity of these individuals is well-known to the Defendants and is disclosed to the Court in the Memorandum in Support of Motion for Leave to Proceed Under Pseudonyms, filed simultaneously herewith under seal.) He has been engaged in his child's life since birth and has supported her financially

at all times.  Until December of 2004, when Defendants' intervened in the relationship,

Mr. Nelson and his daughter enjoyed an excellent and loving relationship.

### THE DEFENDANTS

7.      The named Defendants are all employees or individuals acting as agents of the

Albemarle County Department of Social Services who have played decision-making roles

in an investigation of child abuse allegations against Mr. Nelson from December of 2004

until July 14, 2006, when an appellate decision by the Commonwealth of Virginia

Department of Social Services dismissed certain Defendants' erroneous findings, and

each has continued to play a role in making decisions that have continued to deny Mr.

Nelson and his daughter time together since July 14, 2006.  Each is sued in both their

individual and official capacities.

8.      Defendant Lori Green serves as a case worker for Child Protective Services, an

office of the Albemarle Department of Social Services.  Ms. Green has served as the lead

CPS case worker in the two-year process that began in December of 2004 and continues

to deny Mr. Nelson his parental interests with his child to the present time.

9.      Defendant Cindy Casey serves as Defendant Green's direct supervisor in the

Child Protective Services office, an office of the Albemarle Department of Social

Services.  Ms. Casey has served as Ms. Green's supervisor throughout the two-year

process that began in December of 2004 and continues to deny Mr. Nelson his parental

interests with his child to the present time.

10.     Defendant Kathy Ralston serves as Director of the Albemarle Department of

Social Services.  Ms. Ralston has served in that capacity throughout the two-year process

that began in December of 2004 and continues to deny Mr. Nelson his parental interests with his child to the present time.

11.     Defendant John Freeman serves as Assistant Director of the Albemarle Department of Social Services.  Mr. Freeman has served in that capacity throughout the two-year process that began in December of 2004 and was the person who reviewed the work and the false finding of Ms. Green and Ms. Casey and refused to correct their misconduct and finding, and he continues to deny Mr. Nelson his parental interests with his child to the present time.

12.     Defendant Viola Vaughn Eden is a psychological evaluator in private practice in Newport News, Virginia.  Ms. Vaughn Eden undertook a psychological evaluation of Plaintiff's child at the request of Defendant Green and followed directions provided by Defendant Green.  Defendant is alleged to be a state actor as a result of the actions she took at the request and direction of one or more Defendants.

## FACTUAL ALLEGATIONS

13.     The acts constituting the basis for the causes of action asserted herein occurred in December 2004 and continued through the filing of this action.

14.     The Defendants acted individually and/or in concert to subject the Plaintiff to false charges of child abuse, knowing that such charges were false and/or with reckless disregard for their truth or falsity.

15.     During said period, the Defendants acted individually and/or in concert to procure a "psychological evaluation" of the Child to serve as the basis for bringing charges of child abuse against the Plaintiff, and they procured such evaluation under circumstances

where they knew such evaluation would be false and unreliable, and/or with reckless disregard for the truth or reliability of the evaluation.

16.     Defendants procured an unreliable and dubious "psychological evaluation" of the Child in violation of laws, specific court orders related to the Child and professional standards.

17.     Defendants then used that "psychological evaluation" of the Child to subject the Plaintiff to an investigation for child abuse conducted by the Albemarle County Department of Social Services, the agency where the Defendants are employed.   The Defendants made such use of the "psychological evaluation" knowing such evaluation was false and unreliable, and/or with reckless disregard for the truth or reliability of the evaluation.

18.     At several times after procuring the false "psychological evaluation," Defendants were presented numerous credible express refutations of it as well as other clear evidence of its false nature which they intentionally and/or with gross negligence ignored.   This included a complete hearing by the Albemarle County Juvenile & Domestic Relations Court ("JDR Court") which concluded the "psychological evaluation" was "tainted" and inadequate to support a finding that the Plaintiff had abused his child.

19.     Notwithstanding the JDR Court's ruling, Defendants proceeded to render an administrative "founded" disposition against the Plaintiff on the basis of the false, unreliable and "tainted" "psychological evaluation" they themselves had procured thru false and unreliable measures.

20.     The direct and proximate result of the false and unreliable "psychological evaluation" procured by Defendants, as well as other intentional acts undertaken by the

Defendants, was that a "founded" disposition, Level 1, the most serious finding that can be made, was rendered against the Plaintiff.

21.    Under Virginia law, a "founded" disposition of child abuse carries with it great and heavy burdens on the liberty of the person and family of the person who is the subject of the finding.   The person and the child are stigmatized in a way that permanently interferes with their familial relationship in public and private quarters.   The person's name is placed on a central registry of abusers.   The "founded" disposition may form the basis for severe punishment of the individual and treatment of his relationship with his child by the Department of Social Services and its personnel.   In this case, Defendants based severe restrictions on Plaintiff's visitation with his child (less than 3 hours of supervised time each week for two years) upon their false "founded" disposition.

22.    Further, the Defendants made use of their "founded" disposition to: a) attempt to prejudice court proceedings against Mr. Nelson , b) prejudice Mr. Nelson with the Child's CASA advocates, c) prejudice Mr. Nelson  with the Child's daycare school where he was an active participant, d) prejudice Mr. Nelson with the Child's current school where the Child's teacher and administrators know of the Defendants' finding against the Plaintiff and where the Plaintiff must always have a supervisor present with him so as to essentially cut him out of his Child's education activities, e) provide false justification for the Defendants' refusal to enforce court issued protective orders against Cathy Doe, f) assist Cathy Doe in furthering her career as a "child abuse" advocate and g) prejudice Mr. Nelson with professional evaluators, who were appointed in subsequent judicial proceedings, in order to taint their view of the Mr. Nelson before they conducted their independent assessment and work.

23.     The "founded" disposition was absolutely false.  At no time did Mr. Nelson ever abuse his child in any way.

24.     A neutral hearing officer thereafter overturned the "founded" disposition, ruling that the "psychological evaluation" was unreliable in part due to actions taken by the Defendants and further that Defendants "did not even come close to proving [their] case by a preponderance of the evidence."  This decision by the hearing officer represented the first time the allegation of child abuse had been presented to a judicial or quasi-judicial official for consideration of the merits of the charge.

25.     Notwithstanding said vindication, Defendants' actions caused the Plaintiff to suffer great loss and damage, including loss of precious time with his child, his bond with his child, attorneys' fees and other expenses incurred in his effort to restore his relationship with his child, and significant emotional pain and trauma for both Plaintiff and the child.

26.     The aforesaid actions by the Defendants were undertaken unlawfully, with bad faith and/or with malice or gross negligence, as shown *inter alia* by the allegations of sub-paragraphs a through q:

      a.     Defendants intentionally violated ¶ 16 of the Custody Order, dated August 10, 2004, entered by the Albemarle County Juvenile & Domestic Relations Court ("the JDR Court') by failing to inform or consult the court-appointed therapist, Wendy Carroll, before taking Mr. Nelson's child to Defendant Vaughan-Eden in Newport News, Virginia, for wholly unnecessary forensic evaluation.

b.      Defendants intentionally violated ¶ 19 of the Custody Order, dated August 10, 2004, entered by the JDR Court by failing to accompany Mr. Nelson's child on all visits to the forensic evaluator in Newport News.

c.      Defendant Green intentionally tainted and distorted the child's psychological evaluation by directing the evaluator to ignore all collateral information in the case except for certain prejudicial and false assertions about the Plaintiff by Defendant Green and Cathy Doe.  Defendant Green knew that a comprehensive review of all collateral information was necessary to produce an accurate and reliable evaluation of the child.  Defendant Vaughn Eden has testified under oath that she asked Defendant Green for all collateral information regarding the case history, which was required for a fair and accurate evaluation of the child set forth by The National Children's Advocacy Center in Huntsville, Alabama, also known as the "Huntsville Model", the applicable professional standards for such forensic evaluation.  Defendant Green directed Defendant Vaughn Eden to ignore all collateral information in disregard of the well-established Huntsville Model for evaluating children.

d.      Defendant Green allowed the Cathy Doe to provide the psychological evaluator information about the Plaintiff that Defendant Green known to be false and highly prejudicial.  Defendant Vaughn Eden accepted this one-sided information at the direction of Defendant Green and in violation of well-established protocols for evaluating children.  Defendant Green has testified that she was aware of the falsity of some of the information the mother provided to Defendant Vaughn Eden at the outset of the child's evaluation.

e.        Defendant Vaughn Eden conducted grossly negligent evaluations of the child by violating well-established protocols, failing to sufficiently document sessions, and traumatizing the child.  Defendant Green has testified under oath that Vaughan-Eden did not collect collateral information and case history related to the Child in accordance with the Huntsville Forensic Evaluation Model, the evaluation model that Vaughan-Eden claims to have received her professional training.

f.        Defendant Green provided Cathy Doe 24 hours notice and opportunity to "coach" the child before she met with the child to obtain a "disclosure" of abuse by the 4-year old child – knowing that the mother was a long time suspect of coaching by prior professionals appointed to this matter.

g.        Defendant Green violated state law and regulations in interviewing the child by failing to audiotape the interview or to properly invoke and document an exception to audio-taping.  Audio-taping of interviews of children in investigations of abuse is required to protect alleged abusers, children, and the accuracy of disclosures. Defendant Green intentionally denied Plaintiff and his child this protection.

h.        Defendants ignored numerous allegations, complaints and reports by several objective and professional sources of "coaching" and/or false allegations of abuse by the mother – all in an effort to prove abuse by the father at all costs.  Defendant Green stated to one such professional that she would not investigate the professional's allegations of psychological harm or coaching by Cathy Doe because Defendant Green was only interested in pursuing allegations against the Plaintiff.

i.        Defendants failed to protect the child from numerous intrusive and traumatic medical and psychological evaluations instigated by Cathy Doe, and even

traumatized the child themselves – all in an effort to prove abuse by the Plaintiff at all costs. For example, the Defendants were aware and actively assisted Cathy Doe in willfully violating a JDR protective order by secretly tape recording the JDR Court's appointed therapist, Emily Blankinship, for the Child in order to remove Ms. Blankinship from the case (because Ms. Doe was made aware that Ms. Blankinship had serious doubts about the allegations against the Plaintiff and serious concerns about Ms. Doe). Because of Ms. Blankinship's view, Defendants wanted her removed from the case.

j.      The numerous intrusive and traumatic medical evaluations of the child never produced any physical evidence of abuse of the child. Defendants have ignored this fact from 2004 to the present. Defendant Green has testified that there is no physical evidence of abuse regarding the Child.

k.      Defendants intentionally violated a JDR Court Protective Order, dated November 1, 2005, entered by the JDR Court by aiding and abetting the child's mother's efforts to disrupt the child's therapeutic relationship with Court-appoint therapist and thereafter concealing the mother's interference from the Court-appointed or the JDR Court.

l.      Defendants failed to protect the child and Plaintiff from the mother's patent violation of the JDR Court's Protective Order in interfering with the therapeutic relationship. Since that time, Defendants completely and intentionally failed to provide the child any replacement therapy, notwithstanding their assertion that she is the victim of abuse.

m.      Defendants supported the mother's violation of the JDR Court's protective order requiring that the child remain at a designated daycare facility.

n.      Defendants violated 22 VAC 40-705-110(B) by failing to conduct a "risk assessment" following their determination that the father was "founded." Such a "risk assessment" required, among other things, that Defendants analyze all "evidence gathered during the investigation" and its "reliability and importance." Defendants intentionally failed to perform this assessment.

o.      Notwithstanding copious evidence that the mother made false allegations of abuse, Defendants continued to persecute the Plaintiff and to ignore any violation of the JDR Court's orders by the mother. Defendants also ignored all allegations of misconduct by the mother and refused to investigate any such allegations or to refer such allegations to another office.

p.      Defendants have for two years ignored several professional analyses and reports supporting the Plaintiff's evidence, including the favorable results of an Abel Assessment of Sexual Interest conducted by Defendants' own expert, a lie detector test, and the assessments of several Court-appointed therapists who concluded the child had a very positive relationship with Plaintiff inconsistent with allegations of abuse. Upon learning that Plaintiff had been administered and passed an Abel exam, Defendant Green contacted the expert who administered it to express her displeasure that Plaintiff took the Abel.

q.      Notwithstanding the vindication of Plaintiff by the hearing officer, Defendants have continued to engage in intentional and willful actions to restrict Plaintiff's familial relationship with his child.

## CAUSE(S) OF ACTION

### Count I – Substantive Due Process/Deprivation of Liberty/§ 1983

27.     The allegations in paragraphs 1 through 26 are incorporated by reference.

28.     Defendants, acting under color of state law, have violated Mr. Nelson's liberty

interest, afforded by the Fourteenth Amendment to the United States Constitution, in his

parental and familial relationship with his child by engaging in a prolonged pattern of

intentional, arbitrary, egregious, and grossly negligent official conduct.

29.     As a direct result of Defendant's misconduct, Mr. Nelson's child has been

subjected to psychological traumas, Mr. Nelson was subjected to false findings of abuse,

Mr. Nelson and his daughter were and continue to be prohibited from seeing each other

and maintaining a familial relationship at great emotional pain to both, and Mr. Nelson

has been forced to endure the most unspeakable false allegations and legal expenses to

prove his innocence against a wholly prejudicial governmental intrusion.

### Count II – Conspiracy to Deprive Plaintiff of Liberty Interest/§ 1985

30.     The allegations in paragraphs 1 through 26 are incorporated by reference.

31.     Defendants, acting under color of state law, conspired and acted in concert to

violate Mr. Nelson's liberty interest, afforded by the Fourteenth Amendment to the

United States Constitution, in his parental and familial relationship with his child by

engaging in a prolonged pattern of intentional, arbitrary, egregious, and grossly negligent

official conduct.

32.     As a direct result of Defendant's misconduct, Mr. Nelson's child has been

subjected to psychological traumas, Mr. Nelson was subjected to false findings of abuse,

Mr. Nelson and his daughter were and continue to be prohibited from seeing each other and maintaining a familial relationship at great emotional pain to both, and Mr. Nelson has been forced to endure the most unspeakable false allegations and legal expenses to prove his innocence against a wholly prejudicial governmental intrusion.

## Count III – Malicious Prosecution

33.     The allegations in paragraphs 1 thru 26 are incorporated by reference.

34.     Defendants, individually and collectively, initiated and continued legal process against the Plaintiff based upon allegations of child abuse they knew to be false or unreliable.

35.     As a direct result of Defendant's misconduct, Mr. Nelson has been forced to endure the most unspeakable false allegations and legal expenses to prove his innocence against a wholly excessive governmental use of legal process.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for an Order:

a.      Awarding Plaintiff $2,000,000 in monetary damages.

b.      Awarding Plaintiff $2,000,000 in punitive damages.

c.      Enjoining Defendants from any further violations of Plaintiff's liberty interest in his familial relationship with his child.

d.      Awarding Plaintiff attorneys' fees, costs and expenses pursuant to 42 U.S.C. § 1988 and other provisions of law.

e.      Granting Plaintiff such other relief as the Court deems just and proper or may be allowed by law.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,

By Counsel,

Kirk T. Schroder, Esq. (Va. Bar No. 27469)
Schroder Fidlow, PLC
1901 East Franklin Street, Suite 107
Richmond, Virginia  23223
(804) 225-0505
(804) 225-0507 (telefax)

April 13, 2007