IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| JOHN T. NELSON,<br>*Plaintiff,*<br><br>v.<br><br>LORI GREEN, ET AL.<br>*Defendants* | CIVIL NO. 3:06cv00070<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

A six-year-old child is at the center of a state-court dispute between her father—the Plaintiff here—and her mother over custody and visitation rights. The state-court affair was initiated by a branch of the Virginia Department of Social Services—employees and agents of whom are Defendants here—who had investigated allegations that Plaintiff had abused the child. Plaintiff sued in federal court, alleging that Defendants violated his constitutional rights by the manner in which they carried out their investigation. Plaintiff seeks to enjoin Defendants from further alleged misconduct, but his request violates the comity policy laid out by the Supreme Court in *Younger v. Harris*, 401 U.S. 37 (1971), and in subsequent cases. Plaintiff also seeks money damages from Defendants. But because final resolution of the state-court custody and visitation proceeding could significantly affect the amount of damages Plaintiff seeks here, a stay on these proceedings is appropriate.

For the reasons that follow, I will abstain from hearing Plaintiff's request for injunctive relief and I will stay all other proceedings in this case pending resolution of the state-court dispute.

### I. BACKGROUND

Plaintiff, John T. Nelson ("Plaintiff"), is the father of six-year-old Sarah Doe ("Sarah"), who lives with her mother Cathy Doe ("Mother").[1] Defendants are employees or agents of the

---

[1] The parties' names are pseudonyms.

– 1 –

Albemarle County Department of Social Services ("ACDSS") who were involved in an investigation of child abuse allegedly committed by Plaintiff against Sarah.

Plaintiff alleges that Defendants engaged in willful, intentional, and grossly negligent conduct in an effort to establish a false finding that Plaintiff had sexually abused Sarah. He alleges that Defendants acted together and with Mother to procure a psychological evaluation of Sarah in order to then bring false charges of child abuse against him; Plaintiff states that Defendants knew that the evaluation would be unreliable. Following the psychological evaluation, Defendants were given information that would refute the results of the evaluation, including a finding by the Albemarle County Juvenile & Domestic Relations Court ("JDR Court") that the evaluation was "tainted" and was inadequate to support a finding that Plaintiff abused Sarah.

Despite this finding, Defendants rendered an administrative decision—a Level 1 "founded disposition," the most serious type—against Plaintiff. Under Virginia law, a "founded" disposition burdens both Plaintiff and Sarah, including the attendant stigmatization, permanent interference with the parent-child relationship, registration by Plaintiff on a child abuse registry, and a reduction in Plaintiff's visitation rights. Defendants allegedly used this "founded" disposition in several ways against Plaintiff to his detriment. Plaintiff also alleges that this "founded" disposition was false and was later overturned by a neutral hearing officer and that Defendants engaged in various misconduct along the way.

There is a custody and visitation dispute between Plaintiff and Mother that is currently on appeal in the Virginia state system. *See* Order of Disposition, In Re: [REDACTED], No. CL06-318 (Albemarle County Circuit Court Apr. 18, 2007) [hereinafter "Peatross Order"]; *see also* Notice of Appeal, In Re: [REDACTED], No. CL06-318 (Albemarle County Circuit Court Apr.

18, 2007). Two days before Judge Peatross entered the Peatross Order, Plaintiff sued here under 42 U.S.C. § 1983 and § 1985 for alleged constitutional violations and under state law for alleged malicious prosecution. He seeks $2 million in compensatory damages, $2 million in punitive damages, and an injunction prohibiting Defendants from further violating Plaintiff's relationship with Sarah.

Parties on both sides have filed motions. Defendants Lori Green ("Green"), Cindy Casey ("Casey"), John Freeman ("Freeman"), and Kathy Ralston ("Ralston") (collectively "ACDSS Defendants") filed a motion for *Younger* abstention on Plaintiff's request for injunctive relief (docket entry no. 18), a motion to stay proceedings relating to Plaintiff's request for money damages (docket entry no. 27), and a motion to dismiss the official capacity claims against them (docket entry no. 19). Defendant Viola Vaughn-Eden ("Vaughn-Eden") filed a motion to adopt the ACDSS Defendants' arguments supporting their motion for abstention, motion to stay, and motion to dismiss (docket entry no. 37). And Plaintiff filed a motion to dismiss Vaughn-Eden's answer (which, in the first paragraph, stated that Vaughn-Eden "hereby files her Motion to Dismiss the Complaint pursuant to Rule 12(b)(6)") because Vaughn-Eden failed to comply with the pretrial order's requirement that legal memoranda be filed contemporaneously with motions (docket entry no. 32).

## II. DISCUSSION

### A. Injunctive Relief: Motions for *Younger* Abstention

Plaintiff seeks to enjoin Defendants from "further violations of Plaintiff's liberty interest in his familial relationship with his child." (Compl. Prayer for Relief c)

Defendants argue that this Court should abstain from hearing Plaintiff's request for injunctive relief under the *Younger* abstention doctrine. In *Younger v. Harris*, 401 U.S. 37

– 3 –

(1971), the Supreme Court held that federal courts should not interfere with ongoing state criminal proceedings. *Younger*, 401 U.S. at 40–41. The Supreme Court later extended the *Younger* doctrine to non-criminal judicial proceedings involving important state interests. *See Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). As the Fourth Circuit has stated,

> a federal court should abstain from interfering in a state proceeding, even though it has jurisdiction to reach the merits, if there is:
> (1) an ongoing state judicial proceeding, instituted prior to any substantial progress in the federal proceeding; that
> (2) implicates important, substantial, or vital state interests; and
> (3) provides an adequate opportunity for the plaintiff to raise the federal constitutional claim advanced in the federal lawsuit.

*Nivens v. Gilchrist*, 319 F.3d 151, 153 (4th Cir. 2003) (citing *Middlesex*, 457 U.S. at 432); *see also Harper v. Pub. Serv. Comm'n of W. Va.*, 396 F.3d 348, 351–52 (4th Cir. 2005).

In his memorandum opposing *Younger* abstention, Plaintiff claims that "evidence procured during discovery will merit injunctive relief against one or more [of] the County Defendants to prevent them from pursuing a course of conduct they began in late 2004." (Pl.'s Br. in Opp'n to Defs.' Mot. to Abstain and Stay 3–4) He also argues that "discovery will present even more troubling evidence that will warrant injunctive relief against one or more of the Defendants and his request for such relief will have nothing to do with the relief sought by either him or [Mother] in their private litigation before the state court." (Pl.'s Br. in Opp'n to Defs.' Mot. to Abstain and Stay 7–8)

Here, Defendants argue that (1) the custody and visitation dispute between Plaintiff and Mother is ongoing and was instituted prior to any progress in the case here between Plaintiff and Defendants, that (2) the custody and visitation dispute implicates important state interests, and that (3) Plaintiff had an opportunity to raise his constitutional claims in state court. Plaintiff,

however, argues that (1) abstention is the exception, not the rule, that (2) the state-court proceedings is "private litigation between ... private litigants" and, therefore, *Younger* cannot apply, that (3) there is no important state interest here because Defendants have affirmatively disavowed any interest in the state-court proceedings, that (4) the state court proceeding does not allow him to assert his constitutional claims, and that (5) even if the *Younger* elements are met, I should exercise my discretion and not abstain.

I agree with Defendants.

First, although *Younger* abstention is the exception and not the rule, *see Ankenbrandt v. Richards*, 504 U.S. 689, 704–05 ("It is axiomatic, however, that abstention from the exercise of federal jurisdiction is the exception, not the rule. Abstention rarely should be invoked, because the federal courts have a 'virtually unflagging obligation ... to exercise the jurisdiction given them.'" (omission in original) (internal citation omitted) (internal quotation marks omitted)), the fact that the doctrine exists at all shows that in appropriate circumstances, abstention is appropriate and should be invoked.

Second, Plaintiff argues that the fact that the state-court proceedings is "private litigation between ... private litigants" prohibits me from invoking *Younger* abstention. (Pl.'s Br. in Opp'n to Defs.' Mot. to Abstain and Stay 3) As support for this proposition, Plaintiff quotes from a Seventh Circuit case, *Lynk v. Laporte Superior Court No. 2*, 789 F.2d 554, 558 (7th Cir. 1986). The Seventh Circuit, in turn, cited a Second Circuit case—*Texaco Inc. v. Pennzoil Co.*, 784 F.2d 1133, 1149–50 (2d Cir. 1986))—that was reversed by the Supreme Court a year after the *Lynk* decision came out. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987). In *Pennzoil*, Texaco lost at the trial level of state court and was ordered to pay more than $11 billion in damages; Texaco would have been required to post a $13 billion bond to appeal that decision. *See Pennzoil*, 481

Case 3:06-cv-00070-NKM-RSB Document 45 Filed 08/08/07 Page 5 of 8 Pageid#: 247

U.S. at 3–6. Instead, it filed suit in federal court seeking to enjoin Pennzoil from taking any action to enforce the judgment. *See id.* at 6. Although the federal district court granted the injunction and the Second Circuit affirmed, the Supreme Court reversed, holding that "[t]he courts below should have abstained under the principles of federalism enunciated in *Younger*." *See id.* at 10 (stating, too, that the lower courts "failed to recognize the significant interests harmed by their unprecedented intrusion into the Texas judicial system"). As *Pennzoil* itself demonstrates, then, the mere fact that the state-court proceedings involve private litigation between private parties is not enough to prevent a court from invoking the *Younger* doctrine if the elements are otherwise met.

Third, Plaintiff argues that there is no important state interest implicated here because the state agency—ACDSS—has affirmatively disavowed any involvement in the case. But Defendant cannot have it both ways: if there is no state involvement (as he alleges to support his claim that there is no state interest sufficient to meet *Younger*) then there is no need to grant him the injunctive relief he seeks (enjoining the state from (allegedly) continuing to violate his constitutional rights); if there is state involvement (as he alleges to support his claim for injunctive relief) then the second Younger element can be met so long as there is an important state interest. And here, there *is* an important state interest involved: custody and visitation issues involving children and their parents are quintessential important state and local issues. Additionally, the state-court order currently on appeal to the Virginia Court of Appeals contemplates the continued involvement of Defendants in at least two respects: (1) visitation of Sarah "shall continue to be supervised by the current supervisor," who is Defendant Green and (2) that if Sarah "has questions about the issue of abuse, the parents are to acknowledge it and refer it to the attorney, the child's therapist, or the Department of Social Services." Peatross Order ¶ ¶ 9, 10.

– 6 –

Case 3:06-cv-00070-NKM-RSB   Document 45   Filed 08/08/07   Page 6 of 8   Pageid#: 248

Fourth, Plaintiff's argument that the state-court proceeding does not allow him to assert the constitutional relief he seeks here is without merit. He conceded at oral argument that the state-court proceeding *did* afford him such an opportunity, but that he could not claim money damages.

Finally, Plaintiff urges that even if the *Younger* test is met, I should not abstain. I disagree. Injunctive relief in this case would severely disrupt the state-court proceeding that is still on-going. The effect of this Court telling the state agency responsible for initiating judicial proceedings against Plaintiff that it cannot "further violat[e] Plaintiff's liberty interest in his familial relationship with his child" would directly contradict the trial-level order in state court that already interrupts Plaintiff's liberty interest in his relationship with his child: Plaintiff may permissibly spend a maximum of six hours per week with his child, and such visitation must be under supervision. The "underlying reason for restraining courts of equity from interfering" with ongoing state proceedings "is reinforced by an even more vital consideration[:] the notion of 'comity.'" *Younger*, 401 U.S. at 44. "Comity" means "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Id.* This policy consideration is furthered by my decision to abstain from hearing Plaintiff's challenges here. "So long as those challenges relate to pending state proceedings, proper respect for the ability of state courts to resolve federal questions presented in state-court litigation mandates that the federal court stay its hand." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 13 (1987). Accordingly, I will grant Defendants' motions for abstention.

### B. Money Damages: Motions to Stay

Having decided that I should abstain from hearing Plaintiff's request for an injunction, I also conclude that judicial efficiency dictates that this case be stayed pending final state-court resolution of the custody and visitation dispute between Plaintiff and Mother. Although Plaintiff claims that Virginia custody and visitation orders are never "final" in that they are always subject to review, the Virginia Court of Appeals should have the ability to resolve the custody and visitation issues currently before it prior to a federal court resolving Plaintiff's claims that underlie those custody and visitation issues. Additionally, both parties speculated that the damages Plaintiff seeks in this case may be significantly different—either higher or lower—depending on the final state-court order. To the extent this is true, the final state-court order may also affect any settlement negotiations between the parties here. Accordingly, I will grant Defendants' motions to stay.

### C. Remaining Motions

Because I will abstain from hearing Plaintiff's request for injunctive relief and will stay Plaintiff's money damages claim, I will also stay resolution of Defendants' motion to dismiss the official capacity claims. Because there is no prejudice to Plaintiff in doing so, I will also deny his motion to dismiss Vaughn-Eden's motion to dismiss (docket entry no. 32).

It is so ORDERED.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion to all counsel of record.

ENTERED: _____
United States District Judge

August 8, 2007
Date